**WILLOW FARMS DAIRY, INC., a Maryland corporation,**

v.

**Ezra T. BENSON, Secretary of Agriculture, Defendant,**
and
**Maryland Cooperative Milk Producers, Inc., Intervenor-Defendant.**

**Civil No. 11869.**

United States District Court
D. Maryland.

March 1, 1960.

Charles G. Page, Baltimore, Md., for plaintiff.

George Cochran Doub, Asst. Atty. Gen., Washington, D. C., Leon H. A. Pierson, U. S. Atty., Baltimore, Md., and Alan S. Rosenthal, Atty., Dept. of Justice, and J. C. Krause, Atty., Dept. of Agriculture, Washington, D. C., for defendant.

Philip B. Perlman and Harry T. Gross, Baltimore, Md., for intervenor-defendant.

THOMSEN, Chief Judge.

After appealing from the decree dismissing its complaint for lack of jurisdiction, plaintiff has moved for leave, pending the decision of its appeal, to pay into the registry of this court all sums which it is called upon to pay to the Market Administrator by the terms of Milk Marketing Order No. 127. D.C., 181 F.Supp. 798. Those payments so required to be made to the Market Administrator are: (a) plaintiff's "net pool obligation" for each month, payable on the 13th day of the following month, (b) 5¢ per cwt. for expenses of administration, payable on the 18th day of the following month, and (c) also on the 18th day, the amounts deducted pursuant to Order No. 127 from payments made by plaintiff to its producers during the preceding month. Plaintiff has filed affidavits in this proceeding in which it is estimated that the total amounts so payable on the 13th and 18th days of March on account of plaintiff's February operations will amount to approximately $3,700.

Plaintiff calls attention to 7 U.S.C.A. § 608c(14), which provides that a handler who violates any provision of the Order may be prosecuted and on conviction fined very substantial amounts. Plaintiff says that it fears criminal prosecution if it does not pay at the time required. Plaintiff further alleges that if, on the other hand, it pays the money to the Market Administrator, the money will be disbursed under the provisions of the Order and plaintiff will have no practicable way of recovering the payments if they are held to be illegal. Plaintiff contends that it would be inequitable to subject plaintiff to severe penalties or to loss of funds "illegally" collected pending its attempt to obtain an appellate ruling on the question of this Court's jurisdiction.

The Government and the Cooperative oppose the motion for a number of reasons.

In the first place, the Government states that during the last twenty years there has been no criminal prosecution

merely for failure to make payments due under arrangements similar to the present Order, but that it is the regular practice of the Government, which the Government proposes to follow in this case, to enforce collection under the provisions of sec. 608a(6). Mr. Pierson, the United States Attorney, has assured the Court that there will be no criminal prosecution of plaintiff for any default which may occur before the final decision of the highest Court to which this case may be carried and during a reasonable time thereafter. This assurance would not, of course, apply to any prosecution or proceeding for criminal contempt of an injunction which might be issued by this or any other Court in a proceeding under sec. 608a(6) or in other appropriate proceeding.

The Government notes that this proceeding is brought by plaintiff under the supposed authority of sec. 608c(15) (B), and that although this Court has held that plaintiff has no right to proceed under that section at this time, nevertheless, plaintiff's contention on appeal will be that the case is properly brought under sec. 608c(15) (B). The Government, therefore, calls the Court's attention to the provision in sec. 608c(15) (B) which states that "the pendency of proceedings instituted pursuant to this subsection shall not impede, hinder, or delay the United States or the Secretary of Agriculture from obtaining relief pursuant to section 608a(6) of this title".

The question arises whether that provision in sec. 608c(15) (B) deprives this Court of such power as it might otherwise have to enter an interlocutory order in a case in which the Court has decided that it has no jurisdiction under a particular section but that decision is being challenged on appeal. Mr. Perlman, representing the Cooperative, contends that the quoted provision is an absolute bar to the relief requested by the motion now under consideration. The Government takes the position that whether or not the quoted provision is an absolute bar, it is nevertheless a statement of Congressional policy which must be given

great weight, and in this case controlling weight, in weighing equities and in deciding whether any interlocutory relief should be granted.

It is a troublesome question whether the quoted provision completely destroys the power of this Court, but I do not have to go that far in this case, because I am satisfied that the provision must be thrown into the scales on the side of the denial of the motion, along with the language of the Supreme Court in United States v. Ruzicka, 329 U.S. 287, 67 S.Ct. 207, 91 L.Ed. 290, and that, so aided, defendants' equities outweigh the equities which do exist on plaintiff's side.

The Court recognizes that some financial loss may be suffered by plaintiff if it has to make payments which it would be unable to recover. It is impossible to tell exactly how great that loss might be; but it appears from the affidavits submitted by the Government and by the Cooperative in opposition to the motion that plaintiff has offset that loss to some extent, and probably to a very considerable extent, by raising the price of its milk and dairy products. It is noteworthy that, announcing those increases, plaintiff said: "Any increase in prices on 'Milk Products' is the result of Federal Milk Marketing Order for the Upper Chesapeake Bay Area and other contributing operating costs resulting therefrom. The Secretary of the U. S. Department of Agriculture signed Order effective January 1, 1960; pricing provisions were made effective February 1, 1960."

Counsel for plaintiff has stated to the Court that these increases do not apply in all of the plaintiff's territory, e. g. Frederick County, where the increases were not put into effect because that County is outside the Upper Chesapeake Bay Area. Although this fact is not supported by affidavit, the Court accepts the statement of Mr. Page, counsel for plaintiff, has considered it as a fact in weighing the equities, and believes that it should be considered as a fact to be weighed against the affidavits if any other Court should consider this matter.

But giving effect to Mr. Page's statement, it still appears that plaintiff has been collecting since February 1, and apparently will continue to collect higher prices on most of its sales, which tend to offset the required payments, and which plaintiff cannot practicably refund to its customers and does not offer to refund to its customers if it should be victorious in this case.

It should also be noted that the price to producers goes down today, March 1, which will tend to reduce the plaintiff's alleged irrevocable injury and may even eliminate it altogether, as estimated by defendants' affidavits.

Nevertheless, the Court would be inclined to give plaintiff some relief until the questions can be decided by the Court of Appeals if it were not for the public policy involved, represented by the quoted portion of sec. 608c(15) (B), by the language of the Supreme Court in the Ruzicka case, and by the decision of Judge Wortendyke in United States v. Ideal Farms, Inc., D.C.D.N.J., 162 F. Supp. 28, affirmed 3 Cir., 262 F.2d 334.

It seems to the Court that plaintiff's equities cannot be stronger than those of the six handlers who have filed petitions with the Secretary under sec. 608c(15) (A), and against whom proceedings under sec. 608a(6) will probably be filed, as no doubt they will be filed against plaintiff herein. If plaintiff is entitled to the relief requested in this case, similar relief should be granted to those petitioners when they appear as defendants in the sec. 608a(6) proceedings, and similar relief should also be granted to any other handler who may file a proper petition under sec. 608c(15) (A) and thereby qualify for similar consideration.

The Court must balance the decision of Judge Wortendyke, affirmed by the Third Circuit, against the decision of Judge Clary in United States of America v. Lehigh Valley Cooperative Farmers, D. C.E.D.Pa., 161 F.Supp. 885, cited by plaintiff.

In weighing these two cases, the Court notes first, that the payments involved in the Lehigh Valley Case were not of such importance to the whole program as the payments involved in this case. The payments involved in Lehigh Valley were a compensatory charge assessed on outside milk; the impact of the failure to make those payments would not be anything like as important as the failure to make the payments involved in the case at bar. Moreover, it appears from the record in the Ideal Farms case, which was a proceeding under sec. 608a(6), that the defendant in that case offered to make the same payments in escrow or into the registry of the Court that had been ordered by Judge Clary in the Lehigh Valley case, and that Judge Wortendyke, despite such offer, issued an absolute injunction against the defendant, subject to the provisions contained in the opinion, and that this injunction was affirmed by the Third Circuit.

If this Court were to grant plaintiff's motion, a situation might develop here similar to that which followed H. P. Hood & Son v. United States, 1 Cir., 97 F.2d 677, which brought forth the decision reported in Green Valley Creamery v. United States, 1 Cir., 105 F.2d 754.

The danger of pursuing such a course as was followed in the Hood case, or anything like it, is emphasized not only by what happened there, but by the language of the Supreme Court in the Ruzicka case, which was decided after the Hood case.

For these reasons I will deny plaintiff's motion.